In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1097 & 08-1227

ADVERTISING SPECIALTY INSTITUTE,

*Plaintiff-Appellant/Cross Appellee,*

*v.*

HALL-ERICKSON, INC., d/b/a THE MOTIVATION SHOW,
AND NATIONAL PREMIUM SHOW, INC., d/b/a
THE MOTIVATION SHOW,

*Defendants-Appellees/Cross Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8780—**John F. Grady**, *Judge.*

ARGUED SEPTEMBER 21, 2009—DECIDED APRIL 7, 2010

Before CUDAHY, WOOD, and TINDER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* In 2001, Advertising Specialty
Institute (ASI) and The Motivation Show entered into a
contract that purported to form a "strategic alliance" to
"promote the professional use of promotional products
and distributors." The parties agreed to provide "ASI

with the right of first refusal concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry." The present dispute arises from The Motivation Show's co-locating a trade show in Chicago with Promotional Products Association International (PPAI), which is ASI's close competitor. The district court found that, in doing so, the defendants (collectively, "The Motivation Show") breached their contract with ASI by failing to honor the latter's right of first refusal. However, in light of ASI's failure to prove damages with reasonable certainty, the court awarded nominal damages in the amount of one dollar. ASI contends that the district court committed clear error in finding insufficient proof of damages. The Motivation Show cross-appeals the district court's liability determination. For the reasons that follow, we affirm the holding of the district court in all respects.

## I. BACKGROUND

ASI is a trade-information publisher that facilitates the meeting of purveyors and purchasers of corporate promotional products.[1] ASI has approximately 21,000 distributor members and 3,300 supplier members. Through its affiliate, the ASI Show, ASI holds roughly 80 shows per year throughout the United States. Of these, five

---

[1] Promotional products include corporate apparel, trophies, awards, mugs, pens, T-shirts, lighters, flashlights, Post-It notes, Coach-leather goods, barbeque grills and other items that can display the name or logo of a company.

are "major," or multi-day, shows that are held in Chicago, Dallas, Las Vegas, New York and Orlando. The Chicago show has been held in May or July every year since 1999. Both ASI and The ASI Show are owned by the Cohn family. Matthew Cohn (Mr. Cohn) is the vice chairman of ASI and president of the ASI Show.

The present case involves ASI's relationship with Hall-Erickson and National Premium Show, Inc. (NPS), the latter of which does business as The Motivation Show. Hall-Erickson is the exhibition manager for this show, which is held annually in the fall at McCormick Place in Chicago. Peter Erickson (Mr. Erickson) is the president and sole shareholder of Hall-Erickson. He is also vice president and sole shareholder of NPS.

On February 6, 2001, The Motivation Show entered into an agreement with ASI that purported to create a "strategic alliance." The contract created a three-year obligation on the parties jointly to operate a promotional-products pavilion within The Motivation Show. ASI sought to benefit its members by exposing them to end-buyers, as well as to promotion and advertising agencies. For its part, The Motivation Show stood "to gain additional exhibitors and booths representing distributors and suppliers . . . to sell products to end-buyers." Paragraph nine of the agreement, which bestowed upon ASI "the right of first refusal concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry," is of central importance to the present appeal. The contract provided that it would be subject to Pennsylvania law. Paragraph eight stated

that the agreement would "not be extended to any other promotional products association, trade show, or conference (i.e., PPAI)." As noted, PPAI is a close rival of ASI.

The parties differ markedly in how they construe the events leading up to the present dispute. ASI contends, and the district court agreed, that Mr. Erickson "solicited and invited" PPAI to co-locate its trade show with The Motivation Show at McCormick Place in Chicago. This, the district court found, violated paragraph nine of the contract because The Motivation Show failed to grant ASI a right of first refusal over this co-location opportunity, which the court determined to be in the promotional-product/advertising-specialty industry.

The district court determined that The Motivation Show literally bent over backwards "to make clear to all attendees at both shows that this was a joint endeavor," which was the attractive quality that enticed PPAI to the co-location. Tr. at 736. Judge Grady further found that Mr. Erickson and The Motivation Show's sponsorship was central to PPAI's success in obtaining approval from the Chicago Convention and Tourism Bureau (CCTB) to lease space in McCormick Place in September 2003. The district court also held that Mr. Erickson's "failure to advise ASI of his cooperation with PPAI . . . was deliberate and was designed to conceal from ASI the fact that there was an opportunity in the offing." Judge Grady concluded that Mr Erickson "knew that ASI would be interested, and he had every reason to believe that had he offered the opportunity to ASI, ASI would have been likely to accept it." Indeed, he found

that ASI would have accepted such an offer, had it been forthcoming. Unsurprisingly, ASI fully supports these findings on appeal.

Hall-Erickson and NPS present a more innocuous account. They appeal primarily to the testimony of Mr. Erickson, who stated that he received an independent courtesy call from Mr. Slagle, president and chief financial officer of PPAI, who supposedly said that PPAI was looking to move its trade show to a post-Labor Day period that would be near The Motivation Show. He observed that shows with similar audiences can impact each other negatively, as attendees will go to one, but not to both. Based on this perceived fact, and given that PPAI was apparently intent on coming, Mr. Erickson testified that any detrimental impact could be eliminated by steering PPAI to The Motivation Show. Indeed, by persuading PPAI to come to McCormick Place on the same dates, he asserted that "there could be a very positive impact for The Motivation Show and for the ASI pavilion." Tr. at 376-77. He further stated that he provided the CCTB, at PPAI's request, with information that The Motivation Show and PPAI were not competitive. *Id.* at 380. This was information that the CCTB deemed relevant in determining whether PPAI was entitled to a permit. Mr. Erickson concluded that he did not believe that anything he had done breached The Motivation Show's agreement with ASI.

The district court rejected Mr. Erickson's testimony, characterizing it as "just regrettably false" and further labeling certain of his explanations as "completely untruth-

ful." Judge Grady readily concluded that the co-location was an "opportunity" for the purpose of paragraph nine. The district court thus found that The Motivation Show had violated its contract by failing to make available to ASI the opportunity to exercise its right of first refusal.

However, despite concluding that the defendants were in breach of contract, the district court found that ASI had failed to prove damages with reasonable certainty. Although it reached this conclusion without addressing the factual record in great depth, the district court did note that "in view of [its] attitude toward the defendants' breach, [it] would not be reluctant to make a reasonable estimate of damages if [it] believed that [it] could do so."

In the present appeal, ASI contends that the district court committed clear error in finding that damages had not been proven with reasonable certainty. The Motivation Show cross-appeals Judge Grady's liability determination.

## II. DISCUSSION

### A. The Defendants' Decision Not To Invite ASI To Co-Locate The 2003 Motivation Show Constituted A Breach Of Contract

The Motivation Show advances four unconvincing arguments why it did not breach its contract with ASI. In the first place, it contends that it had neither the authority nor the ability to control the issuance of dates at McCormick Place. Thus, The Motivation Show contends, it could not have offered ASI a right of first refusal

as a matter of law. Second, it argues that it had no control over PPAI's decision to relocate. Third, it submits that ASI could not have accepted an offer to put on a trade show. Last, it argues that the right-of-first-refusal provision in the contract did not apply to the production of trade shows. None of these contentions has merit.

As to the first point, it may be true that the defendants lacked an absolute legal right to dictate the issuance of dates by the CCTB. But the record reveals that the defendants had significant, de facto influence over the CCTB's issuing PPAI a September date in 2003 to co-locate with the Motivation Show. The district court did not clearly err in finding "as a fact that the success of PPAI in obtaining a September date in 2003 to co-locate with The Motivation Show was due, in large part, to the sponsorship of Mr. Erickson and The Motivation Show." Tr. at 737. It also properly found that "without that sponsorship, without that cooperation, it is not at all clear that the bureau or the building would have approved a September date for PPAI." *Id.* Since that same influence could have been employed for ASI's benefit, and would surely have resulted in the CCTB's similarly approving a co-location for ASI, the district court did not err in holding that the right-of-first-refusal provision in the contract was triggered by the co-location opportunity.

The defendants' second argument is that PPAI alone had control over its decision to move its 2003 event to coincide with The Motivation Show. The defendants rely on the testimony of Mr. Erickson, who stated that he could not prevent PPAI or any other trade show from moving to

McCormick Place. We note at the first instance that the district court found his testimony to be "entirely lacking in credibility," "completely untruthful" and "regrettably false." Tr. at 737, 742. We are especially deferential to witness-credibility determinations by district courts, since they enjoy a superior setting in which to make such findings. *See United States v. Gonzalez-Mendoza*, 584 F.3d 726, 730 (7th Cir. 2009); *United States v. Garcia*, 66 F.3d 851, 856 (7th Cir. 1995). In any event, the idea that PPAI could act independently of The Motivation Show in securing dates at McCormick Place is in itself irrelevant. The district found that without The Motivation Show's "cooperative effort," PPAI "would not have been interested in any co-location." Tr. at 737. Ultimately, the district court did not clearly err in finding that Mr. Erickson "solicited and invited" PPAI to avail itself of the opportunity. *Id.* The defendants' present argument that PPAI's decision to co-locate was an independent action is inconsistent with the district court's reasonable fact findings and credibility determinations.

The Motivation Show next submits that ASI, the signatory to the contract, does not hold or produce trade shows and therefore could not accept a co-location offer. This argument is borderline frivolous. There is no reason why a promisee cannot avail of an opportunity to which it is contractually entitled by contracting in turn with a third party, most obviously The ASI Show in the present case. Tr. at 258-59.

Last, we fully agree with the district court's determination that paragraph nine of the contract applied to the production of trade shows. The defendants argue that "the

parties could not have intended" that this provision could have extended "to anything beyond the ambit of The Motivation Show." But Pennsylvania law provides that, where the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. *See Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006); *Chen v. Chen*, 893 A.2d 87, 93 (Pa. 2006). Reviewing the contract de novo, we conclude that paragraph nine is clear and unambiguous when read in light of the contract as a whole. The defendants' argument that paragraph nine is limited to activities taking place within the ambit of The Motivation Show is based on the fact that other provisions in the contract are similarly limited by their explicit terms. But the district court correctly noted that the absence of such language in paragraph nine is highly instructive. That paragraph's provision that ASI is entitled to a right of first refusal with respect to "any activity, alliance, or opportunity concerning the promotional products/advertising specialty industry" clearly captures the co-location opportunity that The Motivation Show provided to ASI's close competitor. We agree with the district court that it "would do violence to the contract to interpret it in any other way." Tr. at 733.

### B. The District Court Did Not Commit Clear Error In Determining That ASI Failed To Prove Damages With Reasonable Certainty

The district court concluded in no uncertain terms that ASI had failed to establish damages with reasonable

certainty. Although its finding was not clearly erroneous, we are concerned that the court may have overstated the inadequacy of the proffered evidence. Having reviewed the record, we believe that the question whether ASI has made a sufficient showing of damages is a close one. Nevertheless, given our clear-error review, the question is not what we would find were we sitting at the trial level. *See Lever v. Northwestern Univ.*, 979 F.2d 552, 553-54 (7th Cir. 1992); *Jones v. Hamelman*, 869 F.2d 1023, 1031 (7th Cir. 1989). We must affirm if the district court's account of the evidence is plausible viewed in light of the record in its entirety. *See id.* Since a reasonable trier of fact could conclude that the proffered evidence falls short of proving damages with reasonable specificity, we affirm.

We begin by noting that the district court correctly identified relevant Pennsylvania law, which provides that contract "damages . . . are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988) (relying on Restatement (Second) of Contracts § 352). In considering whether the district court clearly erred in finding that ASI failed to prove damages with reasonable certainty, we note that Pennsylvania law generally resolves doubts against the breaching party. *Id.* at 867 (citing Restatement, § 352). We note too the Pennsylvania Supreme Court's pronouncement in 1979 that "mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct." *Pugh v. Holmes*, 405 A.2d 897, 909-10 (Pa.

1979). Notwithstanding this language, which might be read to relieve victims of contractual breach of the obligation of identifying actual damages with reasonable certainty, so long as they can demonstrate that they were in fact injured, "the law still requires a plaintiff to produce evidence which establishes, with a fair degree of probability, a basis for assessing damages." *Wujick v. Yorktowne Dental Associates, Inc.*, 701 A.2d 581, 584 (Pa. Super. 1997).

We proceed by discussing the district court's analysis of the relevant testimony and explaining some of our concerns.[2] In particular, we question the court's characterization of Mr. Cohn's testimony, which provided the plaintiff's primary evidence for establishing damages. The court declared:

> I do know that Mr. Cohn's testimony, which ranges from a half million to a million dollars without any specification whatever as to what would account for a difference between a half million and a million, is completely speculative and is not something that the Court could rely upon for an award of damages.

Tr. at 744.

We believe that three issues merit discussion here. First, having reviewed the transcript of Mr. Cohn's testimony,

---

[2] Because ASI appeals only the district court's holding concerning lost profits from the denied opportunity to co-locate with The Motivation Show, we do not consider the court's separate holding that ASI had failed to prove damages from diversion of business from its May 2003 show to the co-located show that was in fact held later that year.

it is indeed true that the witness's estimation of damages ranged from $500,000 to $1,000,000 and even beyond. Mr. Cohn originally maintained that the relevant damages' range was $500,000 to $800,000. Tr. at 142, 153-54, 215. This, being a narrower band, may have been less troubling to the district court. Nevertheless, in light of the testimony of David Kordecki—a former employee of the CCTB—Mr. Cohn subsequently concluded that his original, estimated range was "extremely conservative." *Id.* at 692-94. On cross-examination, Mr. Cohn clarified that the range of damages was linked to the number of booths ASI would have sold at the co-located event with The Motivation Show. He testified that 500 booths would have yielded a profit of half-a-million dollars. He also explained that 800 booths would correspond to over a million dollars' profit. *Id.* at 695.

For this reason, we are troubled by the district court's assertion that Mr. Cohn failed to provide "any specification whatever" to explain the range of estimated damages. His testimony made clear that that range depended on the court's estimate as to the likely number of booths that ASI would have sold. Mr. Cohn also indicated that the low-end figure was based on the lowest level of profit that ASI had ever enjoyed when it sold the same number of booths that PPAI did at the co-located event. He testified that ASI's 2006 show in Philadelphia, which was a 600-booth show, yielded more than $500,000 in profit. Tr. at 143. He then explained that "frankly, we would have done better than that [in the co-located event with The Motivation Show] because we would have had shared costs that we would not have needed

to spend the money on." *Id.* at 143-44. He testified that ASI would not need to have spent as much money on a keynote speaker and that the $191,000 it spent on education in Philadelphia "mostly would have been saved." *Id.* at 144.

Reviewing the transcript, we do not understand the district court's conclusion that Mr. Cohn's testimony did not provide "any specification whatever" about the range of damages. It seems clear to us that Mr. Cohn believed that $500,000 was an "extremely conservative" minimum and that a more accurate estimate of damages would be greater. Tr. at 693.

Our second concern is that the record suggests a (slight) possibility that the district court may have decided that Mr. Cohn's testimony on damages was speculative before it entertained the evidence. We direct our attention to this particular exchange during the direct examination of Mr. Cohn, when the question of quantifying damages was first broached:

> Q. What would you have expected ASI to profit had it been given an opportunity to conduct a co-located show alongside of The Motivation Show in 2003?
>
> Mr. Kolman: Objection, Your Honor. That's completely speculative.
>
> The Court: I agree that it is, really, but I am going to let him answer, and I will take it for whatever it may be worth. But I concede your point. It's very speculative.

Tr. at 142.

Mr. Cohn was the vice chairman of ASI and president of The ASI Show and had considerable experience in the industry. Unlike Mr. Erickson, his testimony was not found to be false or untruthful. In short, Mr. Cohn's testimony was likely to be an important source of evidence on ASI's damages. *See* Restatement (Second) of Contracts § 352, Comment b (explaining that "[e]vidence of past performance will form the basis for a reasonable prediction as to the future" and explaining further that, if the business is a new one, "damages may be established with reasonable certainty with the aid of expert testimony"). We see no reason why his testimony on this subject would necessarily be "very speculative." Nor do we believe that it turned out to be. His subsequent explanation of why ASI's lost profit was between $500,000 and possibly more than a million dollars was neither arbitrary nor unsupported. Since ASI and PPAI are in the same market and have memberships that overlap to some extent, it is not wholly unreasonable to presume that the two companies would have sold a comparable number of booths. Had they done so, Mr. Cohn's testimony reveals that it would have yielded a minimum profit of $500,000. And, in fact, it would likely have yielded more, due to Chicago's higher profitability and the various cost savings associated with co-located events.

Our third, and final, concern is that the district court failed to address evidence of ASI's profitably holding major shows in the past and of the significant cost savings that co-location would have provided. Such evidence weighed on the question of damages and should have formed part of the district court's opinion.

Notwithstanding the district court's rather cursory, and at times inaccurate, assessment of Mr. Cohn's testimony, we cannot find that its ultimate conclusion was clearly erroneous. First, we take the district court at its word when it stated that it would hear Mr. Cohn's testimony and take it for whatever it was worth. In addition, there are facts in the record that render a direct comparison between the number of booths that PPAI sold and the number that ASI would have sold somewhat unreliable. Specifically, ASI had never held two major shows in the same city and in the same year before, and one can only speculate as to what the effect of holding two such events within four months would be on the respective demands for each event. The uncertainty injected by this fact renders a finding of clear error difficult.

Specifically, if the co-located event would have been as attractive to ASI's members as ASI contends, then presumably the demand for that event would have reduced demand for its May 2003 show. Indeed, some such effect would surely have occurred, given the evidence in the record that many distributors and suppliers will attend one trade show in a certain city in a year, but not more. In calculating damages for The Motivation Show's wrongly denying ASI the co-location opportunity in 2003, the damages awarded for that denial would have to be reduced by the profit that would otherwise have been lost by the diluted demand for the May 2003 show.[3] We can

---

[3] ASI argued before the district court that its damages could be determined by the fact that its revenue and profits from the

(continued...)

do no more than speculate as to what the economic relationship between these two events would have been. And, as Pennsylvania law makes clear, such speculation is an inadequate basis for estimating damages. *See Spang*, 545 A.2d at 866.

This shortcoming is compounded by a number of other deficiencies. First, ASI did not identify companies that would have attended a co-located event with The Motivation Show in 2003. Such testimony from specific companies would have been helpful, especially if it could have been elicited from those of ASI's members that did not attend ASI's May 2003 show. ASI points out that 21 percent of its supplier members attended its May 2003 show, so it would have targeted the remaining 79 percent for the co-promoted event later that year. Specific evidence that certain of the latter group of members would have attended a co-located show in the fall of 2003 would have been highly relevant. Absent such evidence, some degree of speculation would be required as to the number of booths that ASI would have sold in a 2003 co-promotion with The Motivation Show.[4]

---

[3] (...continued)

May 2003 show were reduced by the offsetting demand generated by the event co-located by PPAI and The Motivation Show four months later. ASI has elected not to pursue this argument on appeal.

[4] As explained above, although evidence that PPAI sold between 500 and 600 booths is certainly illuminative on the question of how many booths ASI would have sold, it is by no

(continued...)

Second, the appellant/cross-appellee did not obtain financial data from PPAI concerning the latter's revenue and profits from the co-promoted event it held with The Motivation Show in 2003.[5] Such information could have been helpful in crafting a reasonable estimate of the damages. Third, ASI did not introduce evidence of the identities of the specific companies that actually attended PPAI's co-promoted event in 2003. Such evidence would have enabled the district court to calculate damages with greater specificity. Fourth, had The Motivation Show offered ASI a right of first refusal, PPAI might still have held a separate show in July 2003. This would have resulted in three major shows being held in Chicago within four months, which complicates the proof of damages even further.

One inevitably sympathizes with ASI, which has been wronged by a company with which it hoped to enjoy a

---

[4] (...continued)
means determinative. It would appear that the last time PPAI had held a show in Chicago was two years before the 2003 co-promoted event. That being the case, it is certainly possible that PPAI sold more booths than ASI would have, especially when the latter company had held another large show only four months previous.

[5] ASI sought the relevant documents from PPAI through a subpoena that issued from the U.S. District Court for the Northern District of Texas. However, that court refused to grant a motion to compel compliance by PPAI with the subpoena. ASI did not appeal this refusal to the United States Court of Appeals for the Fifth Circuit.

fruitful, strategic relationship. Proving damages from the improper denial of a future opportunity is a difficult endeavor, however, and ASI makes the strongest arguments it can with the evidence in the record. But in light of the preceding shortfalls in the proffered evidence, we cannot conclude that the district court clearly erred. This holds true even when the evidence is read in a manner favorable to the nonbreaching party. *See ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). As explained, our review of the factual findings of the district court is highly deferential. Even if we would have been inclined to find some measure of damages reasonably certain in the present case, this fact alone does not allow us to reverse the district court's factual determination to the contrary.[6]

### III. CONCLUSION

The Motivation Show committed a flagrant breach of contract when it failed to provide ASI with a right of first

---

[6] In holding that the district court did not clearly err in its inadequate-proof-of-damages determination, we affirm its award of nominal damages. We note for completion's sake, however, that ASI's contention that it is entitled to lost profits for five years is without merit. As the district court aptly noted, The Motivation Show exercised its right to terminate the agreement, which it was entitled to do. Moreover, it would be highly speculative to infer that McCormick Place would have granted ASI's request to hold two major trade shows for five years.

refusal regarding the 2003 co-location opportunity at McCormick Place. Although ASI understandably laments the district court's award of nominal damages, contending that it serves to absolve the breaching party of the consequence of its nefarious conduct, the law places the burden of proving damages on the plaintiff. A host of relevant information bearing on such injury is absent. ASI failed to obtain information from PPAI about the profit realized by the co-located event. It failed to introduce evidence that certain of its specific members would have attended a co-located event with The Motivation Show, had such an opportunity been available. Nor did ASI proffer evidence revealing the identities of the companies that did in fact attend PPAI's co-located event with the Motivation Show. It did not introduce formal statistical analysis that would support a reasoned estimate of lost profits. Apart from the evidence supplied by its vice chairman, Mr. Cohn, ASI omitted expert testimony on the nature of the promotional-products market that would allow the judge to estimate lost profits. And what little evidence as was introduced by Mr. Cohn was at least somewhat speculative.

Of course, it is not the case that ASI failed to introduce any pertinent evidence. It is surely relevant that the plaintiff has made a profit in excess of one million dollars every time it has held an event in Chicago. It is notable too that PPAI competes in the same market as the plaintiff and that the former's membership overlaps to a significant extent with the latter's. Since these entities can be compared along certain lines, it is pertinent that PPAI sold 500-600 booths at the co-located event with The

Motivation Show. And there is some force to ASI's observation that the least profit it has ever made selling that many booths is slightly over half-a-million dollars.

But although there is some basis for inferring that PPAI's sale of 500-600 booths would have resulted in profits of approximately half-a-million dollars for ASI, a number of factors serves to undermine our confidence in this inference. In particular, there is scant evidence in the record that speaks to the effect that having two major shows in the same city within four months would have on demand. Even assuming that a co-promoted event with The Motivation Show would be sufficiently attractive to ASI's members that the plaintiff would have sold as many or more booths than PPAI, the record does not indicate how enhanced demand for that event would dilute attendance at ASI's prior, major event in Chicago in 2003. The enhanced demand for the co-located show would presumably detract from members' interest in the year's earlier, major show. Lost profits from the co-located event, caused by The Motivation Show's breach, would have to be adjusted accordingly. Yet the evidence grants us no means by which to conduct this calculus. More fundamentally still, since PPAI's 2003 show appears to be the first it had held in Chicago in two years, it is entirely possible that ASI would have failed to have sold as many booths as its rival ultimately did.

In light of these ambiguities and gaps in crucial evidence, we cannot conclude that the district court's determination was clearly erroneous. We do not believe that our ruling will result in *carte blanche* for promisors who may

seek opportunistically to breach contracts when they believe that any resulting harm will be indeterminate. Wronged parties need merely introduce evidence that is sufficient to allow the court to ascertain the degree of injury with reasonable certainty. Such evidence is absent in the record here, though it should have been within the capacity of ASI to unearth and bring before the court. The judgment of the district court is therefore

AFFIRMED.