In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1976

IRENE DIXON,

*Plaintiff-Appellant*,

*v.*

ATI LADISH LLC, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-C-1076—**J.P. Stadtmueller**, *Judge*.

ARGUED DECEMBER 1, 2011—DECIDED JANUARY 26, 2012

Before EASTERBROOK, *Chief Judge*, CUDAHY, *Circuit Judge*,
and PRATT, *District Judge*.[*]

EASTERBROOK, *Chief Judge*. In November 2010 Ladish
Co. agreed to be acquired by Allegheny Technologies,
Inc. The offer for each share of Ladish's stock was
$24 cash plus 0.4556 shares of Allegheny's stock. At the
closing price of Allegheny stock after the merger's an-

---

[*] Of the Southern District of Indiana, sitting by designation.

nouncement, the package was worth $46.75 per Ladish share, a premium of 59% relative to Ladish's trading price before the announcement. Investors overwhelmingly approved the transaction, which closed on May 9, 2011. Ladish Co. became ATI Ladish LLC.

Investors' reactions implied that Allegheny bid too high: the price of its shares fell when the merger was announced. If Allegheny had been getting an unanticipated bargain, by contrast, its price should have gone up. (Allegheny was and is traded on the New York Stock Exchange; Ladish was traded on the NASDAQ. Both firms' market capitalizations were large enough to attract a following by professional investors and produce reasonably efficient pricing.) Not a single Ladish shareholder dissented and demanded an appraisal. But one shareholder—just one—filed a suit seeking damages and other relief. Irene Dixon contended that Ladish and its seven directors violated both federal securities law and Wisconsin corporate law (the state where Ladish had been incorporated) by failing to disclose material facts in the registration statement and proxy solicitation sent to its investors. According to the complaint, these documents omitted four sets of material facts: (1) details about Ladish's "long-term strategic plan for growth and expansion"; (2) the process that Ladish used to select Baird & Co. as its financial adviser for the transaction; (3) the reason Ladish had broken off discussions with a potential acquirer other than Allegheny; and (4) all facts that Baird relied on when issuing its opinion that the transaction is fair to Ladish's investors. (The fairness opinion itself was disclosed.)

The district court granted judgment on the pleadings in defendants' favor. *Dixon v. Ladish Co.*, 785 F. Supp. 2d 746 (E.D. Wis. 2011). First the court dismissed the claims under federal law, ruling that Dixon's complaint did not satisfy the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §78u–4(b). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Then the court concluded that the business judgment rule blocks Dixon's claim under state law. Dixon conceded that the business judgment rule—which precludes liability for honest mistakes (in the lingo of corporate law, breaches of the duty of care)—covers negligent acts and omissions by directors of Wisconsin corporations. But she maintained that the rule does not apply to public statements and material omissions. According to Dixon, Wisconsin creates a "duty of candor" that is outside the business judgment rule, just as the duty of loyalty is, and that directors violate this duty when they fail to reveal all material information, even if they do not act with the state of mind required for liability under federal securities law. The district judge rejected this argument and held that the business judgment rule prevents an award of damages against corporate directors who, in good faith, fail to publish all information that a court might later think should have been disclosed.

Dixon has abandoned all claims under federal law and on appeal contends only that the business judgment rule does not apply in Wisconsin to disputes about disclosure. Defendants respond that the litigation is moot: the merger closed last May, and it is too late to require

them to issue improved proxy materials. But Dixon wants damages, not another round of voting. A claim for damages is not mooted by the underlying transaction's irreversibility. Defendants assert that the business judgment rule, or Wis. Stat. §180.0828, moot Dixon's claim for damages. Yet a good defense to liability is a reason why defendants prevail on the merits rather than a reason why the litigation should be dismissed without prejudice—which is the consequence of mootness. Defendants don't want a judgment that leaves Dixon free to start over in state court. The demand for compensatory damages is not moot.

Both the claims under federal law and the claim under state law rest on omissions from the registration and proxy statements, documents whose contents are prescribed by the Securities Exchange Act of 1934. The Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. §78bb(f), preempts most state-law claims that rest on statements in, or omissions from, documents covered by the federal securities laws. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006). SLUSA applies to most securities suits brought as class actions, unless they present derivative claims—that is, unless the investor seeks to take over the corporation's own claim against corporate insiders who may have injured the corporation as well as its investors. Dixon sought to represent a class of all equity investors, and this is not a derivative action. Yet defendants have not invoked SLUSA.

Preemption under SLUSA is a defense rather than a limit on subject-matter jurisdiction, see *Brown v. Calamos*,

664 F.3d 123 (7th Cir. 2011), so defendants have forfeited any benefit the statute may have to offer. Perhaps clause (3)(A) explains defendants' omission. This carves out of SLUSA any claim that concerns statements by issuers to their investors about voting their securities in response to an exchange offer, if the claim rests on the law of the state in which the issuer was incorporated. 15 U.S.C. §78bb(f)(3)(A)(i), (ii)(II). This appears to preserve Dixon's state-law claim. Given defendants' forfeiture, we need not decide whether her claim is indeed within the scope of this clause.

The other thing we need not decide is whether the business judgment rule applies to contentions that directors of Wisconsin corporations left useful information out of proxy statements. Some of the information that Dixon contends should have been disclosed—such as the details of Ladish's long-range plan—could be valuable to Ladish's business rivals. Most businesses hold a great deal of information (think trade secrets or products in development) that is simultaneously material to the value of shares and more valuable if secret than if disclosed. Directors must decide whether investors will gain more from secrecy or from disclosure. See *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc). Making such decisions is part of the directors' duty of care; the district judge thought that the business judgment rule accordingly applies, even though making the same decision also may be described as the exercise of a duty of candor.

Whether this is right or wrong, the business judgment rule is a common-law doctrine, and there is no need to

decide how Wisconsin's courts would apply the common law when there is a statute on the topic. Wis. Stat. §180.0828 provides:

> (1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:
>
> > (a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.
> >
> > (b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.
> >
> > (c) A transaction from which the director derived an improper personal profit.
> >
> > (d) Willful misconduct.
>
> (2) A corporation may limit the immunity provided under this section by its articles of incorporation. A limitation under this subsection applies if the cause of action against a director accrues while the limitation is in effect.

This statute covers "any duty" that a director owes to the corporation or its investors; it is as applicable to a "duty of candor" as to the general duty of care. Ladish had not opted out under subsection (2).

Defendants' appellate brief relied on §180.0828, but Dixon did not respond that paragraphs (a) through (d) take the transaction outside the statute. Instead Dixon contended that defendants had forfeited reliance on §180.0828 by not mentioning it in the district court. Yet a litigant does not forfeit a position just by neglecting to cite its best authority; it suffices to make the substantive argument. See *Elder v. Holloway*, 510 U.S. 510 (1994) (omitted case citation); *FDIC v. Wright*, 942 F.2d 1089, 1094–95 (7th Cir. 1991) (omitted statutory citation). Defendants did that by relying on the business judgment rule, which was the subject of extensive briefing in the district court.

Dixon contended that Wisconsin would follow decisions such as *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986), and *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985), which she asserts make the business judgment rule inapplicable to directors' choices concerning mergers. The district judge thought that these decisions concern the price that investors would receive in the transaction, not the procedural details—and also concluded that Wisconsin would not follow *Revlon*. The sort of debate the parties had in the district court shows why §180.0828 is salient. *Revlon* and *Unocal* extend *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985) (*Trans Union*), in which Delaware's

judiciary first held that the business judgment rule does not necessarily protect directors and managers from a claim that they negotiated a merger at an inadequate price. See Daniel R. Fischel, *The Business Judgment Rule and the Trans Union Case*, 40 Bus. Law. 1437 (1985). Statutes codifying the business judgment rule existed before *Trans Union* but were amended afterward to fortify its protection. See James J. Hanks, Jr., *Evaluating Recent State Legislation on Director and Officer Liability Limitation and Indemnification*, 43 Bus. Law. 1207, 1209–22 (1988). Section 180.0828 dates to 1989. It allows prospective relief for errors that directors may make in connection with a merger, but damages are out, unless the directors violate the duty of loyalty or engage in willful misconduct (the domain of §180.0828(1)(a) to (d)). A debate in the district court about the scope of *Revlon* and the business judgment rule leads straight to §180.0828, and *Wright* shows that the parties' failure to cite that statute in the district court does not make it unavailable as a ground of decision on appeal.

Dixon does not contend that Ladish's directors violated their duty of loyalty. They sold their own shares as part of the merger, receiving the same price as outside inves-tors. Their interests thus were aligned with those of all other shareholders. Two of the seven directors had golden-parachute arrangements, potentially entitling them to compensation should they be fired by Allegheny after the merger closed, but five did not—and the board approved the merger unanimously, showing that this potential conflict was unimportant. The potential conflict of interest also was disclosed, which means that

the two directors did not engage in "[a] willful failure to deal fairly with the corporation or its shareholders" in connection with the conflict (§180.0828(1)(a)). None of the other paragraphs in §180.0828(1) is even arguably applicable. It follows that Wisconsin law does not allow an award of damages to Ladish's shareholders.

AFFIRMED