# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-1721, 03-1722 & 03-1723

CONTINENTAL INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

M/V ORSULA, her engines, boilers, etc.,
FEDNAV INTERNATIONAL LTD., and
ATLANT ADRIA CORPORATION, *et al.*,

*Defendants-Appellees.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 02 C 4390, 02 C 4391 & 02 C 4392—**James B. Zagel**, *Judge.*

———————

ARGUED SEPTEMBER 8, 2003—DECIDED DECEMBER 24, 2003

———————

Before KANNE, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* In this consolidated appeal, we are asked to review the dismissal of three separate causes of action by the district court. The defendant moved for dismissal of all three lawsuits under a variety of Federal Rules of Civil Procedure 12(b) motions. Two of the lawsuits were dismissed for improper venue under Rule 12(b)(3) motions; the forum-selection clause governing all three cases

mandated that the plaintiff should have filed elsewhere. The third lawsuit, although subject to the same improper venue considerations, was dismissed because the statute of limitations had run on the statutory claim before filing. The district court did not indicate which Rule 12(b) motion it was granting when it dismissed the third case on statute of limitations grounds. We affirm the district court's dismissal of all three cases solely on venue grounds.

## I.  History

This appeal arises out of disputes concerning three separate shipments of cold-rolled steel from Ghent, Belgium to Burns Harbor, Indiana on board three separate vessels. In each case, the plaintiff, Continental Insurance Company, as subrogee of the owner of the steel, alleges damage to the steel during the voyage. Continental seeks to recover damages from the defendants, herein referred to collectively as "Fednav," under the Carriage of Goods by Sea Act ("COGSA"), the appropriate cause of action for damage to goods during shipment in international trade. 46 U.S.C. § 1300 *et. seq.*

The first appeal pertains to a steel shipment aboard the *M/V Orsula*, discharged at Burns Harbor on April 24, 2001. The second appeal relates to a steel shipment aboard the *M/V Federal Rideau*, discharged at Burns Harbor on July 5, 2001. The third appeal concerns a steel shipment aboard the *M/V Daviken*, discharged at Burns Harbor on April 7, 2001. Each bill of lading for each of the three shipments included three contractual provisions relevant to the present appeal: (a) Burns Harbor was designated as the port of discharge; (b) a forum-selection clause chose the "United States District Court having admiralty jurisdiction at the . . . USA port of discharge . . . to the exclusion of any other Court or forum;" and (c) a provision tracked the

COGSA statute of limitations of one year from the date of discharge of the shipment of goods.

On March 27, 2002, Continental contacted Fednav to request an extension of time to file suit for damages to the steel shipped on the *Daviken*. This was necessary because the April 7 deadline under the COGSA statute of limitations was quickly approaching. Such extensions are commonly used in the industry to avoid litigation by providing more time for settlement negotiations. Fednav agreed to extend the statutory deadline for filing a COGSA claim in the *Daviken* case to July 6, 2002, "subject to [Continental providing] complete claims supporting documents within thirty days" of March 27. Continental answered this request on April 3 by estimating its damage at $700,000 and mailing a series of documents to Fednav.

On April 29, Continental requested an additional extension of time. Fednav declined to grant this request, indicating that its insurer did not consider the documents already submitted to be "complete claims supporting documents." The documents were incomplete, according to Fednav, because they did not provide enough information to "make a proper assessment of . . . legal liability for the claim, or make a proper settlement offer to claimants, or present a proper indemnity claim against third parties." (R., 03-1723, Exh. D.) Specifically, the eight documents did not include an independent survey of the damage to the steel that would include information as to the amount of damage, the cause of the damage, and the number and identity of damaged coils of steel. This survey was available to Continental approximately one week prior to the April 27, 2002 deadline.

Fednav informed Continental that due to its failure to comply with the condition precedent, the original time extension to July 6 was null with regard to any lawsuit arising out of the *Daviken* shipment. Fednav considered any

potential claim from the *Daviken* shipment to be time-barred by the COGSA statute of limitations. Continental responded to this series of events by filing suit in the Northern District of Illinois on June 19, 2002. Continental filed three separate suits, one for each shipment of steel.

Pursuant to motions filed by Fednav under Rule 12(b), the district court dismissed all three causes of action in an Amended Memorandum Opinion and Order entered on February 18, 2003. The *Orsula* and *Rideau* cases were dismissed on the grounds that the Northern District of Illinois was not the proper venue. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). Although the district court could have applied the same venue rationale to the *Daviken* shipment, it opted to dismiss on the grounds that the statute of limitations had run. The procedural posture for this dismissal is not entirely clear from the district court opinion, but it was made in response to a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state a claim. Fednav did not defend the *Orsula* case on statute of limitations grounds, so apparently Continental effectively received a time extension on that suit. The *Rideau* case was filed before July 5, so there was no statute of limitations issue. Continental appealed to this court on March 18, 2003.

## II. Analysis

We must first determine the proper fashion in which to review this appeal. Clearly, the *Orsula* and *Rideau* cases were dismissed pursuant to a Rule 12(b)(3) motion for lack of proper venue under 28 U.S.C. § 1406(a). The *Daviken* case, however, is somewhat of a mystery. The parties assume that the district court dismissed under a Rule 12(b)(1) motion for lack of subject-matter jurisdiction. Since we disagree with the conclusion that the COGSA statute of limitations is jurisdictional, we review the dismissal of all

three cases under 28 U.S.C. § 1406(a) for a lack of proper venue.[1] We may affirm a district court's judgment on alternate grounds found in the record. *Latuszkin v. City of Chicago*, 250 F.3d 502, 503 (7th Cir. 2001); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Mendelovitz v. Vosicky*, 40 F.3d 182, 187 (7th Cir. 1994).

Continental challenges two aspects of the district court's dismissal of the suits on venue grounds. First, Continental disagrees with the conclusion that the meaning of the forum-selection clause "is clear and the clause required the suit to be brought in Indiana." (Dist. Ct. Op. 8.) Second, Continental disputes the district court's decision to dismiss the actions rather than transferring them to the Northern District of Indiana. For the reasons set forth below, we find both challenges to be unpersuasive.

## A.  Interpretation of the Forum-Selection Clause

A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion

---

[1] Under COGSA, "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods." 46 U.S.C. § 1303(6). The COGSA statute of limitations is not jurisdictional. Shippers are able to grant time extensions to their customers or waive the defense entirely; this indicates that federal courts retain the right to hear COGSA claims after the statutory limitations period if the defendant is willing to waive its rights. *See, e.g., Sea-Land Service Inc. v. R.V. D'Alfonso Co.*, 727 F.2d 1 (1st Cir. 1984); *Marine Office of America Corp. v. NYK Lines*, 638 F. Supp. 393 (N.D. Ill 1985); *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha*, 342 F. Supp. 292 (S.D. Tex 1972); *Monarch Industrial Corp. v. American Motorists Ins. Co.*, 276 F. Supp. 972 (S.D.N.Y. 1967). In contrast, subject-matter jurisdiction cannot be waived by the parties. *Levin v. ARDC*, 74 F.3d 763, 766 (7th Cir. 1996).

to dismiss. *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 207 (7th Cir. 1993).[2] Our review of the enforceability and applicability of a forum-selection clause, a contractual term used to select a specific venue, is de novo. *Hugel*, 999 F.2d at 207. In admiralty cases, forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Recognizing this, Continental does not contest the validity of the forum-selection clause. Instead, Continental argues that the district court erred in its application of the clause. Continental insists that they complied with the clause by filing in the Northern District of Illinois because either (1) the clause provides for two equally appropriate venues; or (2) the clause was ambiguous and should be construed against Fednav, the drafter of the bills of lading. We reject both contentions.

In each of the three bills of lading, a forum-selection clause limited venue in the following way:

> Any action by the Merchant arising out of the goods carried under this Bill of Lading shall, whenever the port of loading or the port of discharge named on the face hereof is in the United States of America, be brought only in the United States District Court having admiralty jurisdiction at the USA port of loading or USA port of discharge, as the case may be, to the exclusion of any other Court or forum.

---

[2] A circuit split has arisen on this issue. *See, e.g., Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998) ("[W]e hold that motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3) as motions to dismiss for improper venue."); *Lambert v. Kysar*, 983 F.2d 1110, 1112 n.1 (1st Cir. 1993) ("[S]uch dismissals are founded on Rule 12(b)(6).").

(R., Bills of Lading 501, 502, 509). There is nothing unclear or ambiguous about this contractual provision. The clause calls for suit to be brought in the district court with admiralty jurisdiction at the point of loading or discharge; that single court is the proper forum to the exclusion of all others.

It is uncontested that all three shipments of steel were loaded in Belgium, and were discharged at Burns Harbor. It is uncontested that the district court properly took judicial notice of the fact that Burns Harbor is geographically located in Porter County, Indiana. (Dist. Ct. Op. 8.) The Northern District of Indiana, Hammond Division, encompasses Porter County. 28 U.S.C. § 94(a)(3). Of course, the Northern District of Illinois does not include any part of Indiana. 28 U.S.C. § 93(a). There is neither an option to file in multiple venues nor an ambiguity in the forum-selection clause.

Continental makes much of the fact that, under customs regulations, Burns Harbor is considered to be within the "Port of Chicago." 19 C.F.R. § 101.3; Bureau of Customs, Decision 71-121, Fed. Reg. (May 3, 1971). We agree with the district court that this "useful legal and commercial fiction" has nothing to do with proper admiralty jurisdiction in federal district courts, and therefore nothing to do with the forum-selection clause at issue.

## B. Dismissal of the Suit

Since venue was not proper in Illinois, Continental is left to argue that the district court should have transferred the cases under 28 U.S.C. § 1406(a), rather than dismissing them and thus effectively barring them under the statute of limitations. The applicable venue statute reads:

> The district court of a district in which is filed a case laying venue in the wrong division or district *shall*

> *dismiss, or if it be in the interest of justice, transfer such case* to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) (emphasis added). Our review of the district court's application of the "interest of justice" standard is for a "clear abuse of discretion." *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989). Hence, "we will not second-guess the decision of a district court judge that is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select." *Platinum Home Mortg. Corp. v. Platinum Fin. Group*, 149 F.3d 722, 729 (7th Cir. 1998) (quotation omitted).

The district court was justified in dismissing, rather than transferring, the suits. The district court reasoned that "in a case in which all parties are commercially sophisticated and familiar with the forms of litigation in which they engage," a transfer in the interests of justice is not justified when "[t]here was nothing obscure" about the proper forum. (Dist. Ct. Op. 8-9.) While dismissing the suit because of a mistake that is "easy to commit" might be "so disproportionate" a penalty as to constitute an abuse of discretion, the "proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). Dismissal was proper; filing in the Northern District of Illinois was an obvious mistake made by a sophisticated party with representation. We will not second-guess the district court when it has not clearly abused its discretion.

Furthermore, the dismissal of a cause of action for improper venue under 28 U.S.C. § 1406(a) after the statute of limitations has run does not, on its own, constitute an abuse of discretion. *Hapaniewski*, 883 F.2d at 578-80 (holding that the lower court did not abuse its discretion in dis-

missing the suit where the plaintiffs filed in the wrong federal district court, despite the heavy cost of losing the right to sue because of statute of limitations considerations). Congress enacted § 1406(a) to avoid "the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn*." Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). The district court did not abuse its discretion in finding that the fact upon which venue under the forum-selection clause turned—the location of Burns Harbor—was not elusive.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of all of the COGSA claims put forth by the plaintiff on the basis of improper venue.

A true Copy:

  Teste:

         _____
         *Clerk of the United States Court of*
         *Appeals for the Seventh Circuit*