2021 IL App (1st) 1200326-U
No. 1-20-0326
June 21, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARLYN NUTRACEUTICALS, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 L 000150 |
| | ) | |
| ZAC PACKAGING, LLC and | ) | The Honorable |
| Z AUTOMATION COMPANY | ) | Margaret A. Brennan |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |

PRESIDING JUSTICE WALKER delivered the judgment of the
court. Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's measure of damages following the breach of a settlement
agreement was not against the manifest weight of the evidence.

¶ 2    Plaintiff Marlyn Nutraceuticals ("Marlyn") purchased a packaging machine from ZAC
Packing, LLC ("ZAC'). Marlyn sued for violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq*. (West

2018)), and breach of contract. Marlyn later added Z Automation Company ("Z Automation") as a defendant. ZAC and Z Automation (collectively, "Defendants") reached an agreement to settle the case. Defendants agreed to sell the defective machine to another buyer within a specified time with the proceeds going to Marlyn. Defendants breach the Settlement Agreement by failing to secure a buyer and make monthly payments. Marlyn moved to enforce the agreement and invoked the agreement's confession of judgment provision. The circuit court granted the motion and set a hearing for prove-up of Marlyn's damages. Following the prove-up hearing, the circuit court entered a money judgment against ZAC on the breach of contract claim and entered a money judgment against both Defendants on the consumer fraud claim. Defendants filed a motion to reconsider, which the circuit court denied. Defendants now appeal both judgments. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4        Marlyn is a manufacturer of nutritional supplements. Defendants provide packaging solutions for other companies and share the same address of 163 North Archer Avenue in Mundelein, Illinois. ZAC also manufactures machines used for packaging.

¶ 5        On June 9, 2015, ZAC prepared a proposal to supply equipment to handle Marlyn's packaging for a nutritional supplement. The contract included ZAC's "Performance Guarantee" that the machine will operate at the speeds indicated at an efficiency of 95% or better with a maximum yield loss of 2% for damaged or out of spec finished packages. The contract included a "Factory Acceptance Test" by which ZAC was to use Marlyn's packaging materials to demonstrate that the machine was built and will perform according to the specifications. The contract included a choice of law clause, providing for Illinois law, and a

limitation of liability clause absolving ZAC of liability for loss of profits or incidental or consequential damages. The contract also limited ZAC's liability for damages to the total purchase price of the equipment. Marlyn contracted to purchase the machine for $375,000. Delivery was to occur 18-20 weeks after acceptance of the agreement by Marlyn and receipt of the first payment by ZAC.

¶ 6        On April 25, 2016, Defendants delivered the machine to Marlyn. In August 2016, Marlyn decided to remove the machine from its production line and reinstall the prior equipment. Marlyn informed ZAC that it was removing the machine from production because the machine malfunctioned and never performed as promised. Marlyn requested that ZAC refund all or part of the purchase price, which ZAC refused. Marlyn later discovered that ZAC and Z Automation were separate companies.

¶ 7        On January 5, 2017, Marlyn filed its original complaint against ZAC. The complaint alleged intentional misrepresentation (count I), violation of the Consumer Fraud Act (count II), and breach of contract (count III). On March 3, 2017, Marlyn filed an Amended Complaint, adding Z Automation as a defendant to Counts I and II. Marlyn alleged that the machine it received was not the one promised, was in poor condition, did not perform as stated, and that Defendants were not the same company as they had represented to Marlyn.

¶ 8        Defendants moved to dismiss the amended complaint. The circuit court granted the motion to dismiss as to Counts I and II but denied as to Count III. Marlyn filed a Second Amended on June 26, 2017, and a Third Amended Complaint on June 30, 2017. Defendants answered the Third Amended complaint on August 29, 2017. In their answer, Defendants disputed liability and included three affirmative defenses.

¶ 9    The case was set for trial on November 27, 2018. On that date, the parties reached an agreement to settle the case. They agreed that Defendants would make payments of $1500 a month, starting May 27, 2019, six months from the date of the settlement. Defendants also agreed to find a new buyer for the machine, and to re-sell it within eight months, by June 27, 2019, for "no less than $325,000." Payment of the proceeds of the sale was to go to Marlyn. Defendants would retain some of the purchase price to cover the cost of customizing the machine for the next owner. The Settlement Agreement also indicated that if the Defendants breached the Settlement Agreement they would agree to "a confession of judgment on the case."

¶ 10    The circuit court heard the terms of the parties' Settlement Agreement and entered an order dismissing the case by agreement and retained jurisdiction to enforce the settlement. The parties' attorneys prepared a handwritten term sheet, which the circuit court filed with the November 27, 2018, dismissal order.

¶ 11    Defendants did not perform as promised in the Settlement Agreement. Specifically, they did not make the promised payments and failed to re-sell the machine.

¶ 12    On July 30, 2019, Marlyn filed a Motion to Enforce the Settlement Agreement and invoked the agreement's confession of judgment provision. Defendants admitted to breach of the Settlement Agreement. The circuit court granted the motion to enforce the Settlement Agreement and set the case for a prove-up of Marlyn's damages.

¶ 13    At the prove-up hearing held on October 1, 2019, Marlyn's CEO, Joe Lehmann, testified that Marlyn paid approximately $338,000 to Defendants for the machine, that the machine never worked, and that Marlyn lost at least $57,000 in revenues because of the defective

machine. He also confirmed that Marlyn paid $67,000 in attorney's fees and $11,000 in court costs.

¶ 14     On cross-examination, Lehmann revealed that he did not have documentary evidence regarding how much was paid to either defendant because it was handled by Marlyn's former comptroller, who was not in court. At Defendants' request, the court admitted into evidence the Settlement Agreement, the Third Amended Complaint, and a copy of the proposal that formed the basis for the breach of contract claim against ZAC.

¶ 15     At the close of Marlyn's case in chief, Defendants asked for a directed finding because of the lack of documentary evidence regarding payment to ZAC. The court denied the motion.

¶ 16     Zoran Momich, owner of Z Automation, testified about his interpretation of the Settlement Agreement. Momich testified that he signed the Settlement Agreement and expected to receive a copy. He believed that a default judgment resulting from a failure to find a buyer for the machine would be $325,000 minus thirty percent, which were the terms of the agreement. He confirmed that Marlyn paid "around $330,000" for the machine, which was the full contract price less one outstanding payment. Finally, Momich estimated that the machine was worth around $300,000.

¶ 17     At the close of the Defendants' offer of proof, Marlyn argued that Marlyn was entitled to damages of $57,826.01 in statutory interest, $338,460.75 it paid to ZAC, $58,043.66 it paid to CVS, and $67,361 in legal fees for a total of $533,346.09.

¶ 18     Defendants argued that Marlyn failed to present any documentary evidence regarding the value of the defective machine. Additionally, Defendants argued that since the machine was still at Marlyn's place of business, possession of it represented some value to Marlyn, and there

had been no accounting for that value. Defendants calculated Marlyn's total loss at $38,000: the $338,000 purchase price less Momich's estimated value for the machine of $300,000. In response, Marlyn's attorney stated, "My client testified that the machine is worthless…it is worthless, so the value is zero, at which point in time my client is more than willing -- whatever the judgment amount ends up being, upon receipt of that amount, giving the machine right back to them because we don't believe it's worth anything."

¶ 19      At the conclusion of the hearing, the circuit court entered judgment against ZAC on the breach of contract claim for $338,400 to cover the cost of the machine, $57,826.01 in statutory interest and $466.12 in costs for a total of $396,686.12. On the Consumer Fraud claim, the court ruled against both Defendants and awarded $58,043.66 in failed expectation damages and $40,000 in attorneys' fees for a total of $98,043.66. The court found that the machine never worked and was not what Marlyn had contracted with the Defendants to purchase. The court also found that the value of the machine to Marlyn was zero.

¶ 20      On October 30, 2019, the Defendants filed a Motion to Reconsider, which was denied on January 15, 2020.

¶ 21      This timely appeal followed.

¶ 22                         ANALYSIS

¶ 23      On appeal, Defendants argue that the awards in the breach of contract and consumer fraud claim were both erroneous. Regarding the breach of contract claim, Defendants requests that this court vacate the award or alternatively reduce the judgment to $38,000 and accept Defendants' offer of proof that the machine was worth $300,000. Regarding the consumer fraud claim, Defendants requests this court vacate the award and enter judgment in their favor.

¶ 24      It is undisputed that Defendants breached the Settlement Agreement by failing to secure a sales contract for the subject machine in the time and at the price specified. After Marlyn moved to enforce the Settlement Agreement and invoked the confession of judgment provision, the circuit court granted the motion and set the case for a prove-up of Marlyn's damages. Following the prove-up hearing, the circuit court awarded Marlyn $396,686.12 in damages for the contract claim and $98,043.66 in damages for the consumer fraud claim. The issue we must address is whether the circuit court's measure of damages was against the manifest weight of the evidence. *Mayster v. Santacruz*, 2020 IL App (2d) 190840, ¶ 32.

¶ 25      The parties disagree on our standard of review. Marlyn maintains that the proper standard of review is manifest weight of the evidence. Defendants cite *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610 to argue that the issue of measure of damages involves an interpretation of a statute, presumably and Illinois Uniform Commercial Code (UCC) section 2-714, (810 ILCS 5/2-714(2) (West 2018)), and the burdens imposed by law. Thus, our standard of review should be *de novo*.

¶ 26      We find *Hernandez* inapplicable. *Hernandez* concerned whether a statute provided immunity to an ambulance owner and its driver. 2020 IL 124610, ¶1. Our supreme court reviewed a section 2-619 dismissal and was required to construe the statute in question. *Id*. ¶15. The *Hernandez* court did not review a circuit court's findings on damages, nor did it make the measure of damages a question of law. Unlike in *Hernandez*, this case does not involve either a dismissal under section 2-619 or a construction of a statute. Instead, this case only concerns the assessment of damages. Therefore, the proper standard of review is against the

manifest weight of the evidence. *Med+Plus Neck and Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 856 (2000).

¶ 27 "In a bench trial, it is the function of the trial judge to weigh the evidence and make findings of fact." *Rolando v. Pence*, 331 Ill. App. 3d 40, 47 (2002). A reviewing court will defer to the circuit court's findings of fact unless they are against the manifest weight of the evidence. *Jackson v. Mount Pisgah Missionary Baptist Church Deacon Bd.*, 2016 IL App (1st) 143045, ¶ 71. A judgment is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id*. (quoting *Eychaner v. Gross,* 202 Ill.2d 228, 269 (2002)). If the record contains any evidence to support the circuit court's judgment, the judgment should be affirmed. *In re Estate of Wilson,* 238 Ill. 2d 519, (2010). "In Illinois, the measure of damages is a question of fact to be decided by the trier of fact, and a reviewing court should not substitute its judgment for that of the trier of fact." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 595 (2008).

¶ 28 A. Contract Claim

¶ 29 "The basic theory of damages in a breach of contract action requires that a plaintiff establish an actual loss or measurable damages resulting from the breach in order to recover." (Internal quotation marks omitted.) *In re Illinois Bell Telephone Link–Up II & Late Charge Litigation*, 2013 IL App (1st) 113349, ¶ 19. The proper measure of damages in a breach of contract action is the amount of money necessary to place the plaintiff in a position as if the contract had been performed. *Equity Ins. Managers of Illinois, LLC V. McNichols*, 324 Ill.

App. 3d 830, 837 (2001). Damages should not place the plaintiff in a better position or provide a windfall recovery. *Federal Ins. C. V. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 296 (2009).

¶ 30 Damages are an essential element of a breach of contract action and a plaintiff's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell Telephone Link–Up II*, 2013 IL App (1st) 113349, ¶ 19. A plaintiff must "prove its damages to a reasonable degree of certainty, and accordingly the evidence it presents must not be remote, speculative, or uncertain." *Id*. ¶ 23 (quoting *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill.App.3d 468, 485 (2010)). A plaintiff must present evidence that allows the court to compute damages with a fair degree of probability. *Pyramid Development, LLC v. Dukane Precast, Inc.*, 2014 IL App (2d) 131131, ¶ 37.

¶ 31 In this case, Defendants argue that Marlyn failed to establish contract damages and was left with a windfall recovery. Citing *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 106-07 (2000), and UCC section 2-714, Defendants maintain that the measure of damages for defective equipment is the difference in value between the equipment as delivered and the value it would have had if it had performed as promised. Defendants contend that Marlyn offered no evidence at the prove-up about the value of the equipment in the condition it was delivered.

¶ 32 Lehmann testified that Marlyn paid approximately $338,000 and Momich, confirmed, testifying that Marlyn had paid "around $330,000," which represented the full contract price less one outstanding payment. Although Lehmann did not provide a specific dollar amount for the defective machine, the circuit court placed a zero valuation because the machine did not work.

9

¶ 33    Relying on *Razor*, Defendants argue that the award must be vacated. In *Razor*, the plaintiff purchased a new vehicle from the defendant. 222 Ill. 2d at 78-79. A few weeks later, the defendant subcontracted the installation of a remote starter and alarm system to another company. *Id*. at 79. A month after purchasing the vehicle, the plaintiff experienced difficulties with the vehicle. *Id.* at 80. On numerous occasions, the vehicle failed to start and had to be towed to defendant for repairs. *Id*. The plaintiff sued the defendant for breach of warranty and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (West 2000). *Id*. At trial, the circuit court awarded damages of $5,000 in warranty damages for the diminished value of the vehicle due to the defects and $3,500 in consequential damages for aggravation and inconvenience. *Id.* at 83.

¶ 34    Our supreme court found that the jury's $5,000 warranty damage was erroneous because the plaintiff had not established any facts as to decreased value of the vehicle due to the no-start condition. *Id*. at 107. The only possible evidence of the vehicle's diminished value was the plaintiff's testimony that she would not pay the same amount given the vehicle's problems. *Id*. Our supreme court noted, "There is simply no way for the jury to get from this testimony to a $5,000 award without engaging in speculation and conjecture." *Id*.

¶ 35    *Razor* is distinguishable. In *Razor*, the plaintiff admitted that she still drove the vehicle and had experienced no problems since filing suit, thus the vehicle had some obvious value to her. *Id*. at 82. The difficulty was calculating its diminished value. No such difficulty exists here. Lehmann testified that the machine never worked. Soon after its installation, Marlyn removed the machine from its production line and never used it again. Unlike *Razor*, the machine has no value to Marlyn.

¶ 36    Defendants then cite *SelectSun GmbH v. Porter, Inc.,* 928 F.3d 550, 555 (7th Cir. 2019), to argue that the cost of repair may be minor and awarding the full purchase without evidence that the machine is truly worthless would be grossly unfair. We are unpersuaded by this argument.

¶ 37    In *SelectSun,* the plaintiff insisted that a yacht it had purchased was worthless despite evidence showing that only $2000 in repairs would bring the yacht into compliance with EU standards. In this case, the machine never worked, and there is no evidence that the necessary repairs would be minor. Moreover, if Defendants believed that the defective machine only needed a simple repair, they could have included that option in the Settlement Agreement. Instead, Defendants agreed to sell the machine, which they failed to do. Given that the machine has never worked, and Defendants could not secure another buyer, the circuit court's zero valuation was not against the manifest weight of the evidence.

¶ 38    Defendants next contend that they were erroneously prevented from presenting evidence. We disagree. A defendant is entitled the opportunity to be heard on the matter of default damages in a prove-up. *City of Joliet v. Szayna*, 2016 IL App (3d) 150092, ¶ 57. Here, Defendants were given such an opportunity. Defendants participated in the prove-up hearing, cross-examined Marlyn's witness, and introduced evidence. Although Momich's testimony was only allowed as an offer of proof, he nonetheless provided his estimate for the value of the machine at $300,000. The circuit court, as the trier of fact, was not required to give Momich's valuation testimony any weight. *Motorola Solutions, Inc. v. Zurich Ins. Co.*, 2015 IL App (1st) 131529, ¶ 118. A reviewing court will not disturb the circuit court's factual findings based on testimony unless a contrary finding is clearly apparent. *Id*.

¶ 39　　　　Next, Defendants argue that the award on the contract claim did not honor the contract's limitation of liability, but the failed expectation damages were awarded in the consumer fraud claim, not the contract claim. Defendants breached the Settlement Agreement, which contained no limitation of liability clause. The circuit court enforced the parties' Settlement Agreement in accordance with its terms.

¶ 40　　　　Finally, Defendants argue that award for statutory interest was improper. In Lehmann's affidavit, he asserted that Defendants owed interest pursuant to the Interest Act (815 ILCS 205/2 (West 2018)). The Interest Act provides for the award of interest when money is withheld by an "unreasonable and vexatious delay of payment." *Cress v. Recreation Services, Inc*., 341 Ill. App. 3d 149, 195 (2003). When a written instrument establishes an amount due and the time for payment, the creditor has a right to interest. *Miligan v. Gorman,* 348 Ill. App.3d 411, 416 (2004). Prejudgment interest will only be awarded if the underlying amount due was "liquidated or subject to an easy determination." *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co*., 408 Ill. App. 3d 173, 191 (2010). However, prejudgment interest may not be awarded when the defendant provides a good faith justification for failure to provide payments upon which the plaintiff seeks prejudgment interest. *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1127 (2008). The award of prejudgment interest under section 2 of the Interest Act is reviewed for an abuse of discretion. *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 71.

¶ 41　　　　Here, Defendants breached the contract by installing the machine that failed to perform as expected. Once this breach occurred, Defendants became debtors and Marlyn became Defendants' creditor. *Milligan*, 348 Ill. App at 417. Defendants then breached the Settlement

Agreement by failing to secure a buyer for the machine. Additionally, Defendants had no good faith justification for delaying monthly payment. Even if Defendants believed, as Momich testified, that a breach in the Settlement Agreement would result in a default judgment of $325,000 minus 30% and not the full purchase price, Defendants showed no effort to pay any amount. The circuit court awarded Marlyn prejudgment interest at 5% per annum on the $338,460.75 owed by Defendants to Marlyn for the period from April 25, 2016, to October 1, 2019. This award was not irrational or inequitable, as Defendants caused the time delay. Therefore, the circuit court's award of prejudgment interest totaling $57,826.01 was not an abuse of discretion.

¶ 42                              B. Consumer Fraud Claim

¶ 43      Defendant also argues that the damages award in the consumer fraud claim was erroneous. Specifically, Defendants contend that Marlyn presented no admissible evidence regarding expectation damages or the attorneys' fees.

¶ 44      We acknowledge that at the prove-up hearing Marlyn's attorneys asked Lehmann leading questions regarding lost revenues. The circuit court sustained Defendants' objections, but Lehmann eventually testified that Marlyn lost at least $57,000 in revenue due to the defective machine. Additionally, the record on appeal contains Lehmann's affidavit where he averred the amount to be $58,043.66. Defendants argue that Lehmann's testimony without supporting documentary evidence was insufficient to establish damages. "It is the function of the trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion." *Spiegelman v. Victory Memorial Hosp.*, 392 Ill. App. 3d 826, 842 (2009). Further, this court may affirm the circuit court's judgment based on any matter appearing of

record. *Dalan/Jupiter, Inc. ex rel. JRC Midway Marketplace, L.P. v. Draper and Kramer, Inc.*, 372 Ill. App. 3d 362, 366 (2007). In this case, the circuit court's decision to accept Lehmann's prove-up testimony and award $58,043.66 in lost revenue is supported by the record and was not an abuse of discretion.

¶ 45    Defendants next argue that the evidence for the award of attorney's fees was also insufficient. Under the Consumer Fraud Act, the circuit court may grant reasonable attorney's fees to the prevailing party. 815 ILCS 505/10a(c) (West 2018). The award of attorney's fees is a matter left to the sound discretion of the circuit court. *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006). Further, the circuit court's award of attorney's fees will not be disturbed on appeal unless there has been an abuse of that discretion. *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 22 (2009).

¶ 46    A plaintiff always bears the burden of presenting sufficient evidence from which the circuit court can assess the reasonableness of the fees claimed. *Bank of America v. WS Management, Inc.,* 2015 IL App (1sr) 132551, ¶ 124. "Rather than presenting a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client, the petition for fees must specify the services performed, by whom they were performed, the time expended, and the hourly rate charged." *Id*. A plaintiff is entitled only to reasonable attorney's fees and costs, and this entitlement is limited to only those fees incurred by the plaintiff that were for work specifically related to the consumer fraud claim. *Huss v. Sessler Ford, Inc.*, 343 Ill. App. 3d 835, 843 (2003).

¶ 47    In this case, it is undisputed that Marlyn was the prevailing party. Additionally, Marlyn supported its request with an affidavit of its trial attorney, which included a detailed petition

14

for fees documenting the service performed from December 2016 through January 11, 2019, and totaled nearly $60,000 in fees. The circuit court noted that it reviewed the requested fees and reduced the amount to $40,000. The circuit court cited "the number of amended complaints and the practice that had to go here" as being among the factors justifying the award. The record reveals that Marlyn presented sufficient evidence that allowed the circuit court to assess the reasonableness of the requested fees. The circuit court's award of attorney's fees was not an abuse of discretion.

¶ 48    Finally, the circuit court's October 1, 2019, judgment order misidentified Counts I and II. In the Third Amended Complaint, Count I was consumer fraud and Count II was breach of contract. The judgment order changed that numbering. Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), states that "in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, enter any judgment and make any order that ought to have been given or made." Based on our authority under Rule 366(a)(5), we modify the circuit court's October 1, 2019, judgment order to indicate that Count I was the Consumer Fraud claim and Count II was the breach of contract claim. In all other respects, we affirm the award rendered by the circuit court.

¶ 49                                    CONCLUSION

¶ 50    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 51    Affirmed.